IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA      :
                                   :
           v.                :      1:16CR344-1
                                   :
FLETCHER LEE HARTSELL, JR.    :

The Grand Jury charges:

INTRODUCTION

    1.   Since his election in 1991, FLETCHER LEE HARTSELL, JR., has represented portions of Cabarrus and Union Counties as a member of the North Carolina State Senate, which, along with the North Carolina House of Representatives, constitutes the North Carolina State General Assembly. During that time, FLETCHER LEE HARTSELL, JR., served on various legislative committees, including the Joint Legislative Elections Oversight Committee and the Legislative Ethics Committee.

    2.   Throughout the time in which he has served as a North Carolina State Senator, FLETCHER LEE HARTSELL, JR., has been licensed to practice law in North Carolina and currently serves as the President of Hartsell & Williams, P.A., a law firm located in Concord, North Carolina.

    3.   Since 1994, FLETCHER LEE HARTSELL, JR., together with his wife, has managed Equity Properties of Concord LLC ("Equity

Properties"), a corporation registered with the North Carolina Secretary of State. During the time period relevant to the Indictment herein, Equity Properties owned the real property located at 202 McGill Street in Concord, North Carolina ("202 McGill").

4. During the time period relevant to the Indictment herein, Equity Properties leased space at 202 McGill to the following tenants: Iglesia Cristiana Roca Fuerte; Upper Room Kids LLC, a subsidiary of the Divine Works of K & L; and the Multi-Culture Community Student Union. During the time period relevant to the Indictment herein, Iglesia Cristiana Roca Fuerte and the Multi-Culture Community Student Union operated as non-profit entities organized according to the provisions of Internal Revenue Code Section 501(c)(3). Upper Room Kids LLC operated as a for-profit entity.

5. On October 1, 2006, N.C. Gen. Stat. § 163-278.1(16B) took effect, which prohibited North Carolina state election candidate committees from spending committee funds for any purpose other than those enumerated in the statute. Permissible purposes included paying expenses related to running for public office or holding public office, as well as making charitable contributions. State election candidates were required to file certain disclosure statements ("disclosure reports") with the North Carolina State Board of Elections ("BOE") detailing

2

expenses incurred by their campaign committees and the related purpose of each expense. These disclosure reports were made available to the public. Prior to the passage of this law, North Carolina state election candidate committees were entitled to apply campaign funds toward any type of expense, so long as the expenditures were itemized and described in their disclosure reports.

6. Both before and after N.C. Gen. Stat. § 163-278.1(16B) took effect, and every year through 2015, the BOE provided training materials to FLETCHER LEE HARTSELL, JR., regarding the requirements of the law. From 2007 through 2015, FLETCHER LEE HARTSELL, JR., certified receipt of those materials before a witness. These training materials included the following directives: candidates "must disclose accurate and detailed purpose of expenditure"; "expenditures can only be made for campaign purposes"; "committee funds do not become part of the personal estate of the candidate"; and "a disclosure report covers all committee transactions during a given time period."

7. On September 30, 2006, the day before N.C. Gen. Stat. § 163-278.1(16B) took effect, FLETCHER LEE HARTSELL, JR., through the Hartsell for NC State Senator Committee ("Hartsell Campaign Committee"), made nine campaign fund expenditures, the highest such number made on any given date since 1999. Those nine expenditures included payments to four separate personal

3

credit cards, a payment to Equity Properties, and a payment to the personal checking account of FLETCHER LEE HARTSELL, JR. The nine expenditures together totaled nearly $18,000.00.

8.    Between October 1, 2006, and a date unknown to the Grand Jury but no earlier than January 19, 2015, FLETCHER LEE HARTSELL, JR., solicited monies from the public on behalf of the Hartsell Campaign Committee, while representing that such funds would support his campaign for state public office and his legislative agenda.

9.    Between January 10, 2007, and July 28, 2016, FLETCHER LEE HARTSELL, JR., filed with the BOE disclosure reports on behalf of the Hartsell Campaign Committee, representing that the Hartsell Campaign Committee expenditures detailed therein were related to a purpose authorized by N.C. Gen. Stat. § 163-278.1(16B). FLETCHER LEE HARTSELL, JR., personally reviewed and approved each disclosure report that was so filed and certified that each was complete, true, and accurate.

10.    On or about January 14, 2013, investigators with the BOE began conducting an audit into the Hartsell Campaign Committee expenditures.

THE SCHEME TO DEFRAUD

11.    From in or about January 2007, continuing up to and including in or about July 2016, the exact dates unknown to the Grand Jurors, in the County of Cabarrus, in the Middle District

4

of North Carolina, and elsewhere, FLETCHER LEE HARTSELL, JR., did engage in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises that were material, and for the purpose of executing such scheme and artifice and attempting to do so, knowingly caused to be delivered by mail any matter or thing whatever according to the directions thereon, and knowingly caused to be transmitted by means of wire, radio, and television communication any writings, signs, signals, pictures, and sounds in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1341 and 1343.

12. It was a part of the scheme and artifice to defraud that FLETCHER LEE HARTSELL, JR., would and did spend monies belonging to the Hartsell Campaign Committee on personal items and services not authorized by N.C. Gen. Stat. § 163-278.1(16B), including but not limited to: actual vehicle expenses, including repairs; lawn care payments; finance charges on personal credit cards; and memberships in certain clubs, and in order to perpetuate this scheme, reported in his filed disclosure reports that such expenditures were related to a purpose authorized by N.C. Gen. Stat. § 163-278.1(16B).

13. It was further a part of the scheme and artifice to defraud that FLETCHER LEE HARTSELL, JR., would and did use

5

monies belonging to the Hartsell Campaign Committee to reimburse Hartsell & Williams, P.A., for expenditures that the law firm had made on his personal behalf, including but not limited to: costs for repairs to 202 McGill; loan payments on a life insurance policy; traffic tickets; and personal advances to FLETCHER LEE HARTSELL, JR., all the while representing in his filed disclosure reports that such expenditures to Hartsell & Williams, P.A., were related to a purpose authorized by N.C. Gen. Stat. § 163-278.1(16B).

14. It was further a part of the scheme and artifice to defraud that FLETCHER LEE HARTSELL, JR., would and did identify Hartsell & Williams, P.A., on his disclosure reports as the payee for the expenditure of monies belonging to the Hartsell Campaign Committee in order to conceal the true nature and purpose of those payments and to perpetuate his scheme and artifice to defraud using both the mail and the wires.

15. It was further a part of the scheme and artifice to defraud that FLECHER LEE HARTSELL, JR., would and did use monies belonging to the Hartsell Campaign Committee to reimburse himself twice for the same expenses that were authorized by N.C. Gen. Stat. § 163-278.1(16B): to wit, FLETCHER LEE HARTSELL, JR., would and did use monies belonging to the Hartsell Campaign Committee to reimburse himself for actual automobile expenses such as gas and maintenance for the multiple vehicles that he

6

owned, while also reimbursing himself for the standard mileage rate.

16. It was further a part of the scheme and artifice to defraud that FLETCHER LEE HARTSELL, JR., would and did spend monies belonging to the Hartsell Campaign Committee on utility, insurance, and lawn care payments owed by Equity Properties related to 202 McGill, and lawn care payments related to his mother's property, all the while representing in his filed disclosure reports or to the BOE that such payments were charitable contributions, as authorized by N.C. Gen. Stat. § 163-278.1(16B).

17. It was further a part of the scheme and artifice to defraud that whereas, prior to the implementation of N.C. Gen. Stat. § 163-278.1(16B), FLETCHER LEE HARTSELL, JR., had often listed specific payee and expenditure details on his disclosure reports, after the implementation of N.C. Gen. Stat. § 163-278.1(16B), FLETCHER LEE HARTSELL, JR., obfuscated the actual recipients of Hartsell Campaign Committee funds and the purpose for the payments by characterizing such expenditures as lump sum payments to credit cards in order to deceive the public about the true nature and purpose of those payments.

18. It was further a part of the scheme and artifice to defraud that FLETCHER LEE HARTSELL, JR., would and did attempt to deceive BOE investigators conducting an audit of Hartsell

7

Campaign Committee expenditures by mischaracterizing the nature of improper expenditures: to wit, FLETCHER LEE HARTSELL, JR., drafted a statement purportedly written, and at his request signed, by the lawn care provider for 202 McGill that misrepresented the nature of the services provided. FLETCHER LEE HARTSELL, JR., further drafted statements purportedly written, and at his request signed, by certain tenants of 202 McGill that misrepresented the nature of their respective agreements with Equity Properties. FLETCHER LEE HARTSELL, JR., then presented such false statements to BOE investigators in order to convince them that expenditures related to 202 McGill were charitable contributions.

19. In furtherance of his efforts to justify improper expenditures to the BOE and perpetuate his scheme to defraud, FLETCHER LEE HARTSELL, JR., advised a BOE investigator that even if certain expenditures owed by Equity Properties and related to 202 McGill did not constitute charitable contributions, they were alternately campaign-related: to wit, FLETCHER LEE HARTSELL, JR., stated that the area surrounding 202 McGill was predominantly African-American and he suggested that keeping that property well-maintained was a way of "getting votes" in that area.

20. In furtherance of his efforts to justify improper expenditures to the BOE and perpetuate his scheme to defraud,

8

FLETCHER LEE HARTSELL, JR., advised BOE investigators that when he spent Hartsell Campaign Committee monies on personal expenses, he was simply "reimbursing" himself for monies he could have received under an Internal Revenue Code tax deduction available to him but which he had never taken. FLETCHER LEE HARTSELL, JR., then submitted an amount reportedly owed to him by the Hartsell Campaign Committee based upon the fact that he had not taken this tax deduction.

21. In furtherance of his efforts to justify improper expenditures to the BOE and perpetuate his scheme to defraud, FLETCHER LEE HARTSELL, JR., advised a BOE investigator that the following Hartsell Campaign Committee expenditures were campaign or office-holding related for the following reasons: expenditures related to a trip to Charleston, South Carolina, with his wife's handbell choir were proper because constituents were present; expenditures related to haircuts were proper because he was a "hippie" and would not get his hair cut were he not a legislator; expenditures related to tickets to the theatrical performance "Jersey Boys" were proper because the event constituted "therapy" for him; expenditures related to his granddaughter's birthday party were proper because he mingled there with constituents; expenditures related to a vacation in Edenton with his wife were proper because he was a Senator everywhere that he went and, therefore, the trip constituted

Senate travel; and expenditures related to his driver's license renewal were proper because he observed the processes at the Department of Motor Vehicles at the time.

22. In furtherance of his efforts to justify improper expenditures to the BOE and perpetuate his scheme to defraud, FLETCHER LEE HARTSELL, JR., later withdrew a claim that the expenditures listed in paragraph twenty-one of the Indictment herein, as well as approximately five hundred similar such expenses, were campaign or office-holding related. As a result, the Hartsell Campaign Committee incurred debt based on the expenditure of Hartsell Campaign Committee monies on items now characterized as personal expenses. In order to justify the expenditure of Hartsell Campaign Committee monies on those items as permissible, FLETCHER LEE HARTSELL, JR., advised BOE investigators that, in addition to the amount he claimed that he was owed as "reimbursement" by the Hartsell Campaign Committee related to the Internal Revenue Code tax deduction he could have taken but did not, he was also owed an additional fifteen percent of that amount. FLETCHER LEE HARTSELL, JR., explained to BOE investigators that he was owed the extra fifteen percent because, during the time period he claimed he could have taken this tax deduction, he had incurred the majority of his debt on his American Express credit card and fifteen percent was "approximately what American Express charged" in interest.

10

FLETCHER LEE HARTSELL, JR., claimed that he was owed this "reimbursement" amount only after BOE investigators indicated to him that numerous expenses he had claimed as campaign or office-holding related would not qualify as such.

23. It was further a part of the scheme to defraud that FLETCHER LEE HARTSELL, JR., in an effort to mislead the public about the nature of the Hartsell Campaign Committee expenditures after the beginning of the BOE audit, failed to identify any payments from the Hartsell Campaign Committee to credit card companies in the initial two disclosure reports filed after the audit began, that is, the 2013 semi-annual mid-year disclosure report and the 2013 semi-annual end-of-year disclosure report. However, in the 2015 semi-annual mid-year disclosure report filed on July 30, 2015, FLETCHER LEE HARTSELL, JR., identified payments from the Hartsell Campaign Committee to credit card companies for approximately five thousand dollars in charges that FLETCHER LEE HARTSELL, JR., incurred in the calendar year 2013 and approximately two thousand dollars in charges that FLETCHER LEE HARTSELL, JR., incurred in the calendar year 2014.

24. As a result of the above-described schemes to defraud, from on or about January 1, 2007, continuing up to and including on or about December 31, 2015, the exact dates to the Grand Jurors unknown, FLETCHER LEE HARTSELL, JR., improperly spent approximately $210,000.00 properly belonging to the Hartsell

Campaign Committee on personal goods and services for his own enrichment.

## COUNT ONE (Mail Fraud)

1. Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2. On or about January 11, 2011, in the County of Cabarrus, in the Middle District of North Carolina, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that were material, FLETCHER LEE HARTSELL, JR., did knowingly cause to be delivered by mail any matter or thing whatever according to the direction thereon, to wit, correspondence addressed to the North Carolina State Board of Elections, 441 North Harrington Street, Raleigh, North Carolina, containing the Hartsell Campaign Committee disclosure report for the 2010 Fourth Quarter reporting period.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TWO (Wire Fraud)

1. Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

12

2. On or about January 10, 2011, in the County of Cabarrus, in the Middle District of North Carolina, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that were material, FLETCHER LEE HARTSELL, JR., did knowingly cause to be transmitted to numerous recipients, in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, to wit, an email soliciting monies for the Hartsell Campaign Committee.

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT THREE (Money Laundering)

1. Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2. On or about January 20, 2011, in the County of Cabarrus, in the Middle District of North Carolina, FLETCHER LEE HARTSELL, JR., knowing the property involved in a financial transaction within the meaning of 18 U.S.C. § 1956(c)(3) and (4), to wit, the deposit of $1,360.00 from the Hartsell Campaign Committee account ending 7714 with Fifth Third Bank, a financial institution engaged in, and the activities of which affect,

13

interstate commerce, into the Hartsell & Williams, P.A., account ending 3648 with Fifth Third Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity (the fraudulent solicitation of campaign donations through the mail and interstate wires).

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT FOUR (Money Laundering)

1. Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2. On or about August 1, 2011, in the County of Cabarrus, in the Middle District of North Carolina, FLETCHER LEE HARTSELL, JR., knowing the property involved in a financial transaction within the meaning of 18 U.S.C. § 1956(c)(3) and (4), to wit, the deposit of $3,400.00 from the Hartsell Campaign Committee

14

account ending 7714 with Fifth Third Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, into the Equity Properties of Concord, LLC, account ending 9749 with Southern Community Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity (the fraudulent solicitation of campaign donations through the mail and interstate wires).

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

COUNT FIVE (Money Laundering)

1. Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2. On or about September 29, 2011, in the County of Cabarrus, in the Middle District of North Carolina, FLETCHER LEE

15

HARTSELL, JR., knowing the property involved in a financial transaction within the meaning of 18 U.S.C. § 1956(c)(3) and (4), to wit, the deposit of $166.00 from the Hartsell Campaign Committee account ending 7714 with Fifth Third Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, into the Hartsell & Williams, P.A., account ending 5746 with First Citizens Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the source, the ownership, and the control of the proceeds of specified unlawful activity (the fraudulent solicitation of campaign donations through the mail and interstate wires).

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

16

## COUNT SIX (Mail Fraud)

1.   Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2.   On or about November 8, 2011, in the County of Cabarrus, in the Middle District of North Carolina, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that were material, FLETCHER LEE HARTSELL, JR., did knowingly cause to be delivered by mail any matter or thing whatever according to the direction thereon, to wit, correspondence addressed to numerous recipients containing a letter soliciting monies for the Hartsell Campaign Committee, while representing that such funds would support his campaign for state public office.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT SEVEN (Money Laundering)

1.   Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

17

2.     On or about December 28, 2011, in the County of Cabarrus, in the Middle District of North Carolina, FLETCHER LEE HARTSELL, JR., knowing the property involved in a financial transaction within the meaning of 18 U.S.C. § 1956(c)(3) and (4), to wit, the deposit of $3,459.79 from the Hartsell Campaign Committee account ending 7714 with Fifth Third Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, into the Hartsell & Williams, P.A., account ending 5746 with First Citizens Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity (the fraudulent solicitation of campaign donations through the mail and interstate wires).

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT EIGHT (Wire Fraud)

1. Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2. On or about January 30, 2012, in the County of Cabarrus, in the Middle District of North Carolina, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that were material, FLETCHER LEE HARTSELL, JR., did knowingly cause to be transmitted to numerous recipients, in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, to wit, an email soliciting monies for the Hartsell Campaign Committee.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINE (Mail Fraud)

1. Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2. On or about April 30, 2012, in the County of Cabarrus, in the Middle District of North Carolina, for the purpose of

executing and attempting to execute the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that were material, FLETCHER LEE HARTSELL, JR., did knowingly cause to be delivered by mail any matter or thing whatever according to the direction thereon, to wit, correspondence addressed to the North Carolina State Board of Elections, 441 North Harrington Street, Raleigh, North Carolina, containing the Hartsell Campaign Committee disclosure report for the 2012 First Quarter reporting period.

All in violation of Title 18, United States Code, Sections 1341 and 2.

### COUNT TEN (Money Laundering)

1.    Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2.    On or about October 30, 2012, in the County of Cabarrus, in the Middle District of North Carolina, FLETCHER LEE HARTSELL, JR., knowing the property involved in a financial transaction within the meaning of 18 U.S.C. § 1956(c)(3) and (4), to wit, the deposit of $3,196.10 from the Hartsell Campaign Committee account ending 7714 with Fifth Third Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, into the Hartsell & Williams, P.A., account

20

ending 5746 with First Citizens Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity (the fraudulent solicitation of campaign donations through the mail and interstate wires).

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT ELEVEN (Money Laundering)

1.    Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2.    On or about November 9, 2012, in the County of Cabarrus, in the Middle District of North Carolina, FLETCHER LEE HARTSELL, JR., knowing the property involved in a financial transaction within the meaning of 18 U.S.C. § 1956(c)(3) and (4), to wit, the deposit of $3,000.00 from the Hartsell Campaign

21

Committee account ending 7714 with Fifth Third Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, into the Hartsell & Williams, P.A., account ending 5746 with First Citizens Bank, a financial institution engaged in, and the activities of which affect, interstate commerce, represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity (the fraudulent solicitation of campaign donations through the mail and interstate wires).

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNT TWELVE (Mail Fraud)

1.     Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2.     On or about January 31, 2014, in the County of Cabarrus, in the Middle District of North Carolina, for the purpose of executing and attempting to execute the above-

22

described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that were material, FLETCHER LEE HARTSELL, JR., did knowingly cause to be delivered by mail any matter or thing whatever according to the direction thereon, to wit, correspondence addressed to the North Carolina State Board of Elections, 441 North Harrington Street, Raleigh, North Carolina, containing the Hartsell Campaign Committee disclosure report for the 2013 year end semi-annual reporting period.

All in violation of Title 18, United States Code, Sections 1341 and 2.

COUNT THIRTEEN (Mail Fraud)

1.    Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2.    On or about April 28, 2014, in the County of Cabarrus, in the Middle District of North Carolina, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that were material, FLETCHER LEE HARTSELL, JR., did knowingly cause to be delivered by mail any matter or thing whatever according to the direction thereon, to wit, correspondence addressed to the North Carolina State Board of

Elections, 441 North Harrington Street, Raleigh, North Carolina, containing the Hartsell Campaign Committee disclosure report for the 2014 First Quarter reporting period.

All in violation of Title 18, United States Code, Sections 1341 and 2.

COUNT FOURTEEN (Wire Fraud)

1.     Paragraphs one through twenty-four of the Introduction are hereby incorporated by reference as if fully set forth herein.

2.     On or about January 19, 2015, in the County of Cabarrus, in the Middle District of North Carolina, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and deprive, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that were material, FLETCHER LEE HARTSELL, JR., did knowingly cause to be transmitted to numerous recipients, in the interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, to wit, an email soliciting monies for the Hartsell Campaign Committee.

All in violation of Title 18, United States Code, Sections 1343 and 2.

24

## FORFEITURE ALLEGATION

1.    The allegations in Counts One through Fourteen above are hereby incorporated by reference as if fully set forth herein.

2.    Upon conviction of one or more of the offenses alleged in Counts One through Fourteen of this Indictment, FLETCHER LEE HARTSELL, JR., shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), and 28 U.S.C. § 2461(c), (1) any property, real or personal, which constitutes or is derived from proceeds traceable to one or more of the offenses alleged in Counts One through Fourteen of this Indictment; and (2) any property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, as alleged in Counts Three, Four, Five, Seven, Ten, and Eleven of this Indictment.  The property to be forfeited includes but is not limited to a money judgment in an amount equal to the total amount subject to forfeiture as a result of the offenses alleged in Counts One through Fourteen of this Indictment.

3.    If, as a result of any act or omission of the defendant, any property subject to forfeiture:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person or entity;

25

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty; then the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

All in accordance with 18 U.S.C. § 981(a)(1)(A) and (C), and 28 U.S.C. § 2461(c).

A TRUE BILL:


JOANNA G. MCFADDEN
ASSISTANT UNITED STATES ATTORNEY


SANDRA J. HAIRSTON
ATTORNEY FOR THE UNITED STATES
(Acting under authority conferred
by 18 U.S.C. § 515).

26